UNITED STATES v. YORK.

(Circuit Court, S. D. New York. June 17, 1904.)

1. NATURALIZATION—OFFENSES—AIDING OR ABETTING—STATUTES—CONSTRUCTION.

Rev. St. § 5424 [U. S. Comp. St. 1901, p. 3668]. declares that every person applying to be admitted as a citizen, or appearing as a witness for such person, who knowingly personates any other than himself, or falsely appears in the name of a deceased person, etc., shall be punished by fine or imprisonment, or both; section 5425 [page 3669] prohibits the use of a false certificate of citizenship, etc., on pain of similar punishment; section 5426 [page 3669] prohibits the use of a false certificate, etc., as evidence of a right to vote, on a similar penalty; and section 5427 [page 3670] declares that every person who knowingly and intentionally aids or abets any person in the commission of any felony denounced in the three preceding sections, or attempts to do any act therein made a felony, etc., shall be punished in the same manner and to the same extent as the principal party. Held, that since, by reason of the inadvertent failure of the revisers of the statutes to define a felony, the offense described by sections 5424–5426 [pages 3668, 3669] was not a felony, the inadvertent use of the word "felony" in section 5427 [page 3670] might be disregarded as surplusage, and such use of an inaccurate term did not affect the validity of an indictment under section 5427.

2. SAME.

Rev. St. § 5424 [U. S. Comp. St. 1901, p. 3668] provides that every person applying to be admitted a citizen or appearing as a witness for any such person, who knowingly personates any other person than himself, or falsely appears in the name of a deceased person or in an assumed or fictitious name, or falsely makes, forges, or counterfeits any oath, etc., required or authorized by law relating to or providing for the naturaliza-

tion of aliens, or who utters, sells, disposes of, or uses as true or genuine, or for any unlawful purpose, any false, forged, antedated, or counterfeit oath, etc., or sells or disposes of to any person other than the person for whom it was originally issued any certificate of citizenship, etc., shall be punished. *Held*, that the word "who," as so used, and whenever used in the section, referred to the initial "every person," which related to the words "applying to be admitted a citizen or appearing as a witness for any such person," and hence the section did not include the uttering of a forged naturalization certificate by a person other than the person applying therefor, or appearing as a witness for the person so applying.

3. SAME—STATUTES—REPUNCTUATION.

Where a statute defining a criminal offense is grammatically accurate, and its meaning is not obscure, its scope cannot be extended by repunctuation.

Joel M. Marx, Sp. Asst. U. S. Atty.
Kellogg & Rose, for defendant.

THOMAS, District Judge. The defendant is indicted under sections 5424 and 5427 of the Revised Statutes [U. S. Comp. St. 1901, pp. 3669, 3670]. The first count illustrates the several counts. It charges that the defendant "did knowingly and intentionally and feloniously aid and abet" one Bunoro "to do and commit the said felony in manner and form aforesaid." The felony which the defendant, York, is charged with thus aiding and abetting, is charged earlier in the indictment as follows: That such Bunoro "did feloniously utter as true a certain false and forged certificate, purporting to be a certificate authorized by the laws of the United States of America relating to and providing for the naturalization of aliens, knowing the same to be false and forged, the tenor whereof is as follows." Thereupon is set out a certificate of naturalization purporting to have been issued to one Donato Caggiano, and conforming to that usually issued by the District Court for the Southern District of New York to a person successfully applying for admission to citizenship.

The first question presented arises out of the revision of the statutes in 1874. Sections 5424, 5425, 5426, and 5427 of the Revised Statutes [U. S. Comp. St. 1901, pp. 3668–3670] are a revision of part of section 2 of chapter 254 of the act of Congress of July 13, 1870 (16 Stat. 254), with certain changes of phraseology to be hereafter noted. Such section 2, after describing the offenses, continues:

"Every person so offending shall be deemed and adjudged guilty of felony, and, on conviction thereof, shall be sentenced to be imprisoned and kept at hard labor for a period not less than one year or more than five years, or be fined in a sum not less than three hundred dollars nor more than one thousand dollars, or both such punishments may be imposed, in the discretion of the court. And every person who shall knowingly and intentionally aid or abet any person in the commission of any such felony, or attempt to do any act hereby made felony, or counsel, advise. or procure, or attempt to procure, the commission thereof, shall be liable to indictment and punishment in the same manner and to the same extent as the principal party guilty of such felony, and such person may be tried and convicted thereof without the previous conviction of such principal."

Section 5424, which relates to some of the offenses provided for in section 2 of the act of 1870, does not of itself provide for punishing one

who aids and abets the same. This is also true of section 5426. Section 5425 relates to certain other offenses provided for in section 2 of the act of 1870, but specifically provides for the punishment of one who aids or assists or participates in the commission of some of such offenses. Section 5427 provides as follows:

"Every person who knowingly and intentionally aids or abets any person in the commission of any felony denounced in the three preceding sections, or attempts to do any act therein made felony, or counsels, advises, or procures, or attempts to procure, the commission thereof, shall be punished in the same manner and to the same extent as the principal party."

Thus it will be seen that while section 2 of the act of 1870 denounced all offenses therein named as felonies, and provided a general clause· for the punishment of a person knowingly and intentionally aiding or abetting the same, section 5424 and section 5426 of the Revised Statutes make no provision for one aiding or abetting, while section 5425 does specifically make such provision; and thereupon follows section 5427, with its general provision for punishing any person who aids or abets any felony denounced in the three sections preceding it, or who does "any act therein made felony."

It is urged that the indictment in the present action cannot be maintained under section 5424, because that does not contain within itself any provision for punishing one aiding or abetting, and that section 5427 is not applicable to section 5424, inasmuch as no offense therein described is denounced as felony, nor is any act in section 5424 described "therein made felony."

The defendant is indicted for aiding another in the uttering as true a false certificate. The Circuit Court of Appeals for the Third Circuit, in the case of Berkowitz v. United States, 93 Fed. 452, 35 C. C. A. 379, decided that such offense was not a felony. It is urged by the United States that the court did not read section 5427 in connection with the three preceding sections, and that, had it done so, it would have decided that all of the offenses named in the three preceding sections were felonies. This court may not presume that the Appellate Court overlooked section 5427, for it is difficult to conclude that, after discussing the earlier law, it omitted consideration of all the sections based upon it.

The precise situation is this: Offenses specifically made felonies under the act of 1870 are not unless by section 5427 made felonies at all by the Revised Statutes, nor can a person be punished for aiding or abetting those named in section 5424 and section 5426, and, it may be, some offenses named in section 5425, if the word "felony" be regarded as used in its strict legal meaning. The history of the revision shows clearly the cause of the use of the word "felony" in section 5427. The revisers, in their first draft of the revision, as reported to the House committee, reported certain definitions (see Report of Revisers U. S. Statutes, vol. 2, p. 2561), and, among others, one as follows: "A felony under any law of the United States, is a crime, punishable with death, or by imprisonment at hard labor." Chapter 1, § 2. This definition, if adopted by Congress, obviated the necessity of specifically denouncing as felonies the offenses named in sections 5424–5426, as section 2 of the act of 1870 had done. The House committee and Congress did not adopt such definition, but finally did adopt sections 5424–5427, as re-

ported by the revisers and the House committee. Therefore the system proposed by the revisers was disturbed, so that the offenses named in sections 5424–5426 ceased to be felonies, as they had been named under the act of 1870, but section 5427 was not changed. Hence none of the offenses in sections 5424–5426 are felonies, and section 5427, made applicable to them alone, has no application to them, if the word "felony," as used in section 5427, must be given its strict legal meaning. It is argued with much force that the court should give it such meaning, and thereby hold that section 5427 performs no office in the revision as adopted. But when the history of the legislation is considered, this view is not deemed obligatory. It is quite obvious that Congress intended to make section 5427 applicable to three sections that precede it, and to the offenses therein named. If it failed to do so, it is because it called such offenses by the wrong name. It called them by the wrong name because it inadvertently omitted to observe the result of omitting the revisers' definition of "felony." But inasmuch as it is clear that section 5427 was intended to have some effect, inasmuch as it is in terms related to the three preceding sections, and must cover the offenses named in those sections, or none, and inasmuch as the phraseology used in section 5427 is substantially that used in section 2 of the act of 1870, and inasmuch as the reason that led to the erroneous use of the word "felony" in section 5427 is clear, it seems a warranted conclusion that the misuse of the word "felony" in section 5427 may be disregarded. In other words, Congress inadvertently described offenses as felonies that it had refused to make felonies. It does not seem the better judgment to hold that this inaccurate use of a term should be regarded as showing the intention of Congress, when the section otherwise, and the history of the revision, point clearly to a different intention. There seems little opportunity for discussion. If Congress calls an offense a "felony" when it is a misdemeanor, or a "misdemeanor" when it is a felony, and this technical misdescription defeats punishment, the defendant's demurrer on this ground should be sustained. But mere use of an inaccurate term for an offense should not have such effect, and, for the reasons above given, it would be peculiarly improper to give it such effect in the present case.

But another grave objection to the indictment remains, and in this instance both the revisers and Congress have left a serious gap to be bridged by judicial interpretation before a most important part of section 5424 can be made applicable to the present case, or to other grave acts which, as it is urged, should be contained within it, and which were contained in section 2 of the act of 1870. The revisers and Congress, with apparent deliberation, have omitted words from the new section that were within the earlier law. Section 5424 provides:

"Every person applying to be admitted a citizen or appearing as a witness for any such person, who knowingly personates any other person than himself, or falsely appears in the name of a deceased person, or in an assumed or fictitious name, or falsely makes, forges, or counterfeits any oath, notice, affidavit, certificate, order, record, signature, or other instrument, paper, or proceeding required or authorized by law, relating to or providing for the naturalization of aliens; or who utters, sells, disposes of, or uses as true or genuine, or for any unlawful purpose, any false, forged, ante-dated, or counterfeit oath, notice, certificate, order, record, signature, instrument, paper, or

proceeding above specified; or sells or disposes of to any person other than the person for whom it was originally issued any certificate of citizenship, or certificate showing any person to be admitted a citizen, shall be punished by imprisonment at hard labor not less than one year, nor more than five years, or by a fine of not less than three hundred nor more than one thousand dollars, or by both such fine and imprisonment."

It will be observed that after the word "or," and before the words "who utters," etc., are omitted the words "every person," with which the section opens. The same omission occurs in the third auxiliary clause of the section. Hence "who," as so used, and wherever used in the section, refers to the initial "every person." But such words "every person" are modified by the words "applying to be admitted a citizen, or appearing as a witness for any such person." Hence, as the section literally reads, a person uttering a certificate can only be punished in case he was a "person applying to be admitted a citizen, or appearing as a witness for any such person." The indictment does not charge that Bunoro, the principal, was either a "person applying to be admitted a citizen, or appearing as a witness for any such person," and it was admitted upon the argument that he was not such person. In section 2 of the act of 1870 the language is:

"If any person applying to be admitted a citizen, or appearing as a witness for any such person shall knowingly personate any such person, * * * or if any person shall falsely make, forge, or counterfeit any oath, affirmation, notice, affidavit, certificate," etc.

That is, before each "who" in each auxiliary clause in the former section the words "any person" are repeated without the qualifying words. The revisers and Congress with apparent intention have omitted to repeat the words "every person" in any auxiliary clause, but have left each relative "who" referring to "every person applying to be admitted a citizen, or appearing as a witness for any such person." Hence, to sustain the indictment, the court must reinstate before each "who" the words "any person," so carefully used in the former act, and painstakingly omitted from section 5424, except at the beginning thereof, where the words "every person" are used. The section, in fit terms, limits the persons punishable to a certain class. The question is whether the court may interpolate in a penal statute words which the revisers and Congress have twice rejected, and by such interpolation bring under its penalty new classes of offenses. The government vehemently urges that, unless the effect of the old statute be given to the new, persons punishable under the old law may escape. It is a sufficient answer that the responsibility rests upon the revisers and Congress.

In United States v. Goldenberg, 168 U. S. 95, 102, 18 Sup. Ct. 3, 42 L. Ed. 394, it is said:

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true, there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute."

In United States v. Harris, 177 U. S. 309, 20 Sup. Ct. 611, 44 L. Ed. 780, it is said:

"Giving all proper force to the contention of the counsel of the government that there has been some relaxation on the part of the courts in applying the rule of strict construction to such statutes, it still remains that the intention of a penal statute must be found in the language actually used, interpreted according to its fair and obvious meaning. It is not permitted to courts, in this class of cases, to attribute inadvertence or oversight to the Legislature when enumerating the classes of persons who are subjected to a penal enactment, nor to depart from the settled meaning of words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute."

Mr. Chief Justice Shiras, in delivering the opinion of the court in the above case, quotes the language of Mr. Chief Justice Marshall in United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37, as follows:

"The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, and not in the judicial, department. It is the Legislature, not the court, which is to define a crime and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. But this is not a new, independent rule which subverts the old. It is a modification of the ancient maxim, and amounts to this: That, though penal statutes are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be applied so as to narrow the words of the statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the Legislature obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous indeed to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute, because it is of equal atrocity or of a kindred character with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule in other cases."

In Lake County v. Rollins, 130 U. S. 670, 9 Sup. Ct. 652, 32 L. Ed. 1060, Mr. Justice Lamar said:

"To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort in all cases is to the natural signification of the words in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning apparent on the face of the instrument must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it."

There are occasions when earlier statutes can be consulted. The Supreme Court has stated the rule. In United States v. Bowen, 100 U. S. 513, 25 L. Ed. 631, it is said:

"The Revised Statutes must be treated as the legislative declaration of the statute law on subjects which they embrace on the 1st day of December, 1873. When the meaning is plain, the courts cannot look to the statutes which have been revised to see if Congress erred in that revision."

This is approved in Vietor v. Arthur, 104 U. S. 498, 26 L. Ed. 633:

"The decisive question is whether section 728 is to be construed as an independent act, or whether the plaintiff is at liberty, by referring to the prior act from which it was taken, to show that it was the intention of Congress to, limit it to the cases named in such prior act. The general rule is perfectly well settled that where a statute is of doubtful meaning, and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction. But where the act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given to it." Hamilton v. Rathbone, 175 U. S. 419, 20 Sup. Ct. 155, 44 L. Ed. 219.

The subordinate clause of the sentence in section 5424 relates to a—

"Person applying to be admitted a citizen, or appearing as a witness for any such person, who knowingly personates any other person than himself, or falsely appears in the name of a deceased person, or in an assumed or fictitious name, or falsely makes, forges, or counterfeits any oath, notice, affidavit, certificate, order, record, signature, or other instrument, paper, or proceeding required or authorized by any law relating to or providing for the naturalization of aliens."

Now, observe how the second clause (the one in question) specifically refers to the acts enumerated in the first clause. It proceeds "or who utters, sells, disposes of, or uses as true or genuine, or for any unlawful purpose, any false, forged, antedated, or counterfeit oath, notice, certificate, order, record, signature, instrument, paper, or proceeding above specified"; and the section continues, "or sells or disposes of to any person other than the person for whom it was originally issued any certificate of citizenship, or certificate showing any person to be admitted a citizen." The section is harmonious in its several parts. "Every person applying," etc., is forbidden to personate, to falsely appear in the name of another, or in a fictitious name, to falsely make, to forge, to counterfeit, any oath, notice, etc., or to utter, sell, dispose of, to use as true, any such papers, or to sell any certificate, etc. The intention is that a person applying, etc., shall not personate, nor make false naturalization papers; that he shall not utter, sell, or use the same, nor sell or dispose of any certificate. The section is free from all ambiguity. It is grammatically correct. Its provisions are consistent one with another. They are applicable to cases that might arise. They do not cover all classes of offenders included in the act of 1870. If it be admitted that they should cover such classes, yet they plainly do not. The revisers and Congress could not have read the section without observing the omission. They deliberately took out words from the earlier act that were palpably necessary to cover such offenses. This court is not permitted to interpolate words that the revisers and Congress rejected. The section is sensible. It is accurate. If the public welfare demands that it should be broader, the power rests alone with Congress to amplify it.

The court recognizes with what care the learned counsel for the government has marshaled and submitted the rules of construction and the sustaining authorities. But in the present case there is no occasion for resorting to rules of construction. Their aid is neither required nor justified, because the language of section 5424 is plain. There is no

doubt of its meaning. It is free from ambiguity. The Legislature means what it says, and its words declare its meaning. Why look beyond the words in such case? The government insists that the meaning is obscure. That is the vice of its argument. The meaning is unclouded.

It is finally urged that the section should be repunctuated to give the words a meaning that they do not now express. The proposition is to repunctuate a statute so as to include classes that are clearly excluded, when there is not the slightest evidence on the face of the statute of an intent to include them. The proposition is to punctuate the section so as to make it read as if it contained the very words that were in the old statute, which words the revisers and Congress have omitted. The situation is this: The earlier statute contained words that included various classes of offenders. The revisers and Congress omitted some of them. The proposal is that the section be repunctuated so that it will be equivalent to a statute with the omitted words present. That would be grave interference with legislative action. The extent to which counsel for the government asks the court to go in the matter of reconstruction of the statute is illustrated by the following extract from his argument:

"Every person, [comma inserted] applying to be admitted a citizen [comma omitted] or appearing as a witness for any such person, who knowingly personates any other person than himself, or falsely appears in the name of a deceased person, or in an assumed and fictitious name, or falsely makes, forges, or counterfeits any oath, notice, affidavit, certificate, order, record, signature, or other instrument, paper, or proceeding required or authorized by any law relating to or providing for the naturalization of aliens; or, [comma inserted] who utters, sells," etc.

The government advocates the change as follows:

"By thus transposing the comma in the first portion of this section, it would be clear that the first clause was intended to cover every person who applies to be admitted a citizen, or appears as a witness and knowingly personates, etc., and the second clause as thus punctuated ('or, who utters, sells,' etc.) would relate to the principal subject 'every person,' and would clearly mean 'or every person who utters, sells,' etc. The entire sentence, grammatically analyzed, is a simple, declarative sentence; the subject being 'person,' the predicate being 'punished,' and the object 'imprisonment'; the subject being qualified by the complex adjective clauses 'applying to be admitted a citizen' and 'knowingly personating,' etc., and the second of the complex qualifying clauses being 'who utters, sells,' etc."

It is at least doubtful whether this repunctuation would demand or even justify the construction urged by the government. In any case, it is considered that the plain reading of the section, and the intention of the Congress as gathered from it, should not be thwarted by such corruption of the text.

Counsel for the government has just now brought to the attention of the court the decision of Judge Butler upon the trial of an indictment against certain persons charged with conspiracy under section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], based upon section 5424 [page 3668] thereof; the charge being conspiracy to defraud the United States by uttering as true false certificates of naturalization. It appears that Lindsay, one of the defendants, was tried alone on this indictment; that he filed a demurrer upon the ground that none of the

three men named in the indictment was "a person applying to be admitted as a citizen, or appearing as a witness for such person"; that Judge Butler overruled the demurrer, and Lindsay was found guilty; that subsequently the same point was raised upon a motion in arrest of judgment, and that Judge Butler again passed upon the question and dismissed the motion; and that later Merrick, another of the defendants, pleaded guilty to the indictment. Judge Butler wrote no opinion, nor is the court advised of the ground of his decision, nor has the indictment or record been presented to the court. So far as appears, the question now raised may not have been presented by the indictment.

In any case, it is the plain duty of the court to sustain the demurrer to the indictment in the action at bar.