

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-1999

# USA v. Graham

Precedential or Non-Precedential:

Docket 98-1556

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"USA v. Graham" (1999). *1999 Decisions.* Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 5, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-1556

UNITED STATES OF AMERICA

v.

WINSTON C. GRAHAM
a/k/a Vincent Graham, a/k/a Michael Diamond
a/k/a Tyrone L. Simmons
Winston C. Graham, Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 97-cr-00642)
District Judge: Honorable Eduardo C. Robreno

Argued: January 27, 1999

Before: BECKER, Chief Judge, SCIRICA and ROSENN
Circuit Judges.

(Filed March 5, 1999)

MAUREEN KEARNEY ROWLEY,
 ESQUIRE
Chief Federal Defender
DAVID L. McCOLGIN, ESQUIRE
Assistant Federal Defender
Supervising Appellate Attorney
SYLVIA A. RUSSIANOFF, ESQUIRE
 (ARGUED)
Assistant Federal Defender
Defender Association of Philadelphia
Federal Court Division
437 Chestnut Street
Philadelphia, PA 19106-2414

Counsel for Appellant

MICHAEL R. STILES, ESQUIRE
United States Attorney
WALTER S. BATTY, JR., ESQUIRE
Assistant United States Attorney
Chief of Appeals
JUDY GOLDSTEIN SMITH, ESQUIRE
ROBERT A. ZAUZMER, ESQUIRE
 (ARGUED)
Assistant United States Attorneys
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

This case requires us to determine whether a misdemeanor can be an "aggravated felony" under a provision of federal law even if it is not, technically speaking, a felony at all. The particular question before us is whether petit larceny, a class A misdemeanor under New York law that carries a maximum sentence of one year, can subject a federal defendant to the extreme sanctions imposed by the "aggravated felon" classification. Despite

2

our misgivings that, in pursuit of a clearly defined legislative goal (to severely punish unlawful reentry into this country), a carelessly drafted piece of legislation has improvidently, if not inadvertently, broken the historic line of division between felonies and misdemeanors, we conclude that Congress was sufficiently clear in its intent to include certain crimes with one-year sentences in the definition of "aggravated felony." Congress has the power to determine penalties for unlawful reentry into this country and to define the classes of persons subject to those penalties. We think that in this case Congress's definition requires a finding that this defendant was an aggravated felon, though not a felon in the conventional sense, and therefore we will affirm the judgment of the District Court, which sentenced Winston Graham in accordance with that approach.

I. Facts & Procedural History

Graham was deported in 1996 after serving a previous sentence for reentering the country after his deportation in 1990. He returned to the United States without permission from the Attorney General and was arrested by the Immigration and Naturalization Service in 1997. He again pled guilty to reentry into the US following deportation, a violation of 8 U.S.C. S 1326, and was sentenced to 72 months in prison. The appeal is from that judgment, and raises only sentencing issues.

Graham has three state convictions: In February 1986, he was convicted of unlawful possession of marijuana, a violation with a maximum fine of $100, stemming from a November 1985 arrest. In May 1986, he was convicted of attempted possession of marijuana, a Class B misdemeanor with a maximum of three months' imprisonment, stemming from a November 1984 arrest. Finally, in May 1990, he was convicted of petit larceny, a Class A misdemeanor with a maximum of a year's imprisonment under New York law. See N.Y. Penal Law S 155.25 (McKinney 1997). He received a sentence of one year.

Congress has classified certain crimes as "aggravated felonies" for purposes of immigration and deportation. See

3

8 U.S.C. S 1101(a)(43). In this case, the aggravated felony classification increases the penalty for the crime of reentering the country after deportation. See U.S.S.G. S 2L1.2(b)(1)(B) (incorporating the aggravated felony definitions of 8 U.S.C. S 1101(a)(43)). The District Court found that Graham's second drug conviction and his petit larceny conviction should be classified as aggravated felonies, which triggered a sixteen-level increase in the base offense level. The aggravated felony classification changed Graham's guideline sentence range from 21-27 months to 70-87 months.

The District Court reasoned that, because Graham had a prior drug possession conviction, his second conviction would have been a federal felony. However, because the conduct underlying Graham's second possession conviction did not occur after his first possession conviction had become final, as the applicable statute requires in order to convert a second possession offense into a felony, see 21 U.S.C. S 844(a), Graham would not have been subject to felony punishment even had he been convicted under federal law. The government concedes the error on appeal, and therefore we need not resolve the question of whether this "hypothetical federal felony" treatment is appropriate.

We may still uphold Graham's sentence in its entirety, however, because if even one of Graham's prior convictions qualifies as an aggravated felony, the full sixteen-level increase applies. The District Court reasoned that the petit larceny offense was also an aggravated theft felony because it carried a maximum sentence of at least one year. Graham argues that section 1101(a)(43)(G), which defines a theft crime that qualifies as an aggravated felony, is patently ambiguous because it is missing a critical verb and can be interpreted two ways, one of which supports Graham's claim. Therefore, he argues that due process concerns and the rule of lenity, which requires ambiguous statutes to be construed in favor of defendants, support his claim.[1] Graham also contends that the uses of "aggravated
_____

1. Graham also argues that collateral estoppel applies. We reject this contention. In his prior unlawful reentry prosecution, the District Court added four points to his criminal history instead of sixteen, based on the

4

felony" elsewhere in Title 8 make clear that an "aggravated felony" must first be a felony. While we reject both of these claims, the latter in particular deserves serious consideration.

II. Minimum Sentence Versus Sentence Imposed

Section 1101(a)(43)(G) defines as an aggravated felony "a theft offense . . . for which the term of imprisonment at least one year." The sentence is obviously missing a crucial verb. Graham argues that there are two options: The statute could apply to theft offenses "for which the term of imprisonment is at least one year" or to theft offenses "for which the term of imprisonment imposed is at least one year." He then argues that, because we should interpret ambiguous statutes to favor defendants, we should interpret the statute to mean "is," not "imposed," so that the minimum term for the theft offense has to be at least one year. Since petit larceny carries no minimum term, he contends, it is not an aggravated felony under his interpretation.

Graham claims that the rule of lenity mandates his interpretation--courts should not interpret a statute to increase a penalty when the interpretation can be based on "no more than a guess as to what Congress intended." Ladner v. United States, 358 U.S. 169, 178 (1958).

_____

very same information. However, the change in the law governing the definition of aggravated felonies means that the issues are no longer the same, and therefore collateral estoppel cannot apply. Under the law as it existed at the time of Graham's previous reentry prosecution, theft convictions had to carry sentences of at least five years to qualify as aggravated felonies, but Congress amended the law to change "five" to "one." Furthermore, the government did not object to the presentence report in the previous sentencing proceeding and the district judge adopted the report and its findings in its entirety. The matter was thus not actually litigated in the previous sentencing proceeding. See Haring v. Prosise, 462 U.S. 306, 316 (1983); In re Gober, 100 F.3d 1195, 1203 (5th Cir. 1996) (issue is not actually litigated if it is not denied by the other party); In re Graham, 973 F.2d 1089 (3d Cir. 1992) (issues critical to judgment are nonetheless not "actually litigated" if the parties stipulate to them).

5

However, the rule of lenity does not apply simply because a statute requires interpretation. See Caron v. United States, 118 S. Ct. 2007, 2012 (1998) (the rule is "not invoked by a grammatical possibility"); Muscarello v. United States, 118 S. Ct. 1911, 1919 (1998) (the rule only applies if "after seizing everything from which aid can be derived . . . we can make no more than a guess as to what Congress intended" (citations and internal quotation marks omitted)). Courts will also consider other clear provisions of a law in order to interpret an ambiguous portion of the statute. See Hernandez v. Kalinowski, 146 F.3d 196, 199 (3d Cir. 1998).

Graham's statutory construction is flawed. Before its amendment in 1996, section 1101(43)(G) defined "aggravated felony" in relevant part as "a theft offense . . . for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at leastfive years." The reference was clearly to the term imposed and not to the statutory minimum. Although the 1996 amendments created a typographical error by inadvertently removing the verb, there is no evidence that Congress intended to begin relying on the statutory minimum rather than the sentence actually imposed for a conviction. As we read the statute as a whole, even if "is" were the missing verb, the reference to "term of imprisonment" would still be to the term actually imposed, whatever the potential maximum might have been. What Graham really wants us to do is to imply the word "minimum" into the statute, so that the minimum term provided for by law would have to be at least one year to constitute an aggravated felony.

The statute, however, never suggests that the proper referent is a crime's statutory minimum. As part of the 1996 amendments, Congress added a definitional provision at section 1101(a)(48)(B), providing that "[a]ny reference [in S 1101(a)] to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."[2] This

_____

2. A further conforming amendment deleted the phrase "imposed (regardless of any suspension of imprisonment)" each place it appeared in 8 U.S.C. S 1101(a)(43)(F), (G), (N), and (P).

6

suggests that the actual term imposed is ordinarily the definitional touchstone.

It is true, as Graham contends, that other language in section 1101(a)(43) refers to a term that may be imposed as opposed to one that is imposed. See S 1101(a)(43)(J) (covering racketeering and gambling crimes "for which a sentence of one year imprisonment or more may be imposed"); S 1101(a)(43)(T) ("an offense relating to a failure to appear before a court . . . for which a sentence of 2 years' imprisonment or more may be imposed"). Graham is correct that the "may be imposed" language of these provisions is inconsistent with a reading of section 1101(a)(48)(B) that would insist that every reference to a "term of imprisonment" refers to the term actually imposed. It is reasonable to read section 1101(a)(48)(B) instead as an instruction about how to treat suspended sentences.

However, there is still no indication that Congress wished to make the statutory minimum for a crime relevant to the definition of "aggravated felony." The fact that some provisions of section 1101(a)(43) refer to a term that "may be imposed" while others refer to crimes "for which the term of imprisonment is at least 12 months," S 1101(a)(43)(P), demonstrate that Congress knows how to distinguish between the penalty authorized for a crime and the penalty actually imposed in a particular case. See also S 1101(a)(43)(R) (covering commercial bribery, counterfeiting, forgery, or trafficking in vehicles with altered vehicle identification numbers "for which the term of imprisonment is at least one year"); S 1101(a)(43)(S) (covering obstruction of justice, perjury, subornation of perjury, and witness bribery "for which the term of imprisonment is at least one year"). The maximum possible penalty and the penalty actually imposed, then, may be relevant, but there is simply no evidence that the minimum penalty ever matters in determining whether a crime is an "aggravated felony."

We conclude that when Congress amended the law it did not intend to establish a minimum penalty threshold. Instead, it lowered the maximum penalty required to make a theft violation an aggravated felony. Cf. United States v. Cordova–Beraud, 90 F.3d 215 (7th Cir. 1996) ("imposed"

7

refers to the particular defendant's actual record sentence, or, if the sentence is indeterminate, its upper bound). Even construing the statute favorably towards Graham, there is no indication that we should consider the minimum possible penalty as opposed to the penalty actually ordered by the sentencing court. We therefore reject Graham's argument that a one-year sentence for a crime with no statutory minimum falls outside section 1101(a)(43)(G).

III. Can Misdemeanors Be Felonies?

Graham's best argument for lenity is as follows: 8 U.S.C. S 1101(a)(43)(G) defines an aggravated felony as a theft offense with a sentence of at least one year. However, the statute defining the underlying offense of reentry after deportation, 8 U.S.C. S 1326(b), provides separately for penalties for aliens who have committed "three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)." 8 U.S.C. S 1326(b)(1). By contrast, section 1326(b)(2), the provision involved here, provides that an alien removed "subsequent to a conviction for commission of an aggravated felony" shall be fined or imprisoned for not more than 20 years. Because section 1326(b)(1) refers to certain specific misdemeanors that Congress has singled out for felony treatment and also implies that aggravated felonies are a subset of felonies, it seems odd to hold that a misdemeanor that does not fall under section 1326(b)(1) can be an aggravated felony, as it is not a felony. Graham argues that we should assume that Congress did not intend to change the historic line between felonies and misdemeanors when it made its rather clumsy amendment decreasing the threshold for aggravated felonies from five years to one year.

This is an issue of first impression in the federal courts. In the cases cited by the government, courts interpolated "is" or "was" as the verb in the aggravated felony statute, so that it applies to crimes "for which the term of imprisonment [is] at least one year."3 But that does not

---

3. See United States v. Mendoza-Corrales, ___ F.3d ___, 1998 WL 911696, at *1 (10th Cir. Dec. 31, 1998) (using "for which the term of

8

answer the question whether section 1326(b) can apply to misdemeanors.

The line between felonies and misdemeanors is an ancient one. The line has not always been drawn between one year and one year and a day, since it used to be that felonies were all punishable by death. With the rise of the penitentiary and the disappearance of the death penalty for most felonies, however, the felony-misdemeanor distinction solidified at the one-year line. The distinction was intertwined with the definition of "infamous crimes," which came to be defined as crimes punishable by more than one year of confinement. The one-year mark was used by Congress as early as 1865. See United States v. Ramirez, 556 F.2d 909, 913-21 (9th Cir. 1976) (discussing, in extensive detail, the evolution of "infamous crimes" to mean crimes punishable by more than a year's confinement); see also Thorm v. United States, 59 F.2d 419, 419 (3d Cir. 1932) (linking "infamous crimes" with felonies and noting the consistent more-than-one-year line in federal law); cf. In re Mills, 135 U.S. 263 (1890) (using the more-than-one year

_____

imprisonment [was] at least one year" when the defendant received a two-year sentence); United States v. Hernandez-Lopez, ___ F.3d ___, 1998 WL 874860, at *1 (10th Cir. Dec. 16, 1998) (using "for which the term of imprisonment [is] at least one year" when the defendant had a two-year sentence); United States v. Pantin, 155 F.3d 91, 92 n.2 (2d Cir. 1998) (using "for which the term of imprisonment[is] at least one year" when the defendant had a four-year sentence and the defendant did not dispute the aggravated felony classification), cert. denied, 67 U.S.L.W. 3436 (U.S. Jan. 11, 1999); Valderrama-Fonseca v. Immigration & Naturalization Serv., 116 F.3d 853, 855 (9th Cir. 1997) ("any burglary offense for which the sentence of imprisonment is at least one year" is an aggravated felony; defendant had a two-year sentence). Interestingly, Choeum v. Immigration & Naturalization Service, 129 F.3d 29 (1st Cir. 1997), slipped back into the traditional felony/misdemeanor line when discussing the aggravated felony statute, though in that case it was clear that the immigrant's crime was a felony, as she had a three to nine year sentence. The court quoted 8 U.S.C. S 1101(a)(43)(F), without attempting to fix its grammatical error (the same error as found in S 1101(a)(43)(G)).
Then, the court wrote that, because Choeum's crime satisfied the definition of a crime of violence and "Choeum's term of imprisonment exceeded one year," she was guilty of an aggravated felony. Id. at 35 n.4 (emphasis added).

9

rule to determine whether a sentence allowed imprisonment in a penitentiary).

Furthermore, under federal law, a felony is defined as a crime that has a maximum term of more than one year. See 18 U.S.C. S 3559(a); U.S.S.G. S 2L1.2 comment 1. Graham contends that felony status is an absolute requirement for an "aggravated felony." He also submits that Congress did not make clear its intent to change the long-established rule that only crimes with penalties over one year are felonies when it amended section 1101(a)(43), and so we should assume that it did not intend to change that rule. See Kalinowski, 146 F.3d at 199-200.

The government responds that Congress made its intent crystal clear by amending (G) to include crimes with a maximum one-year penalty. Yet Congress was, obviously, less than painstaking in amendment, and the amendment was designed to decrease the range from five years (fairly arbitrary) to one (a term with an historic meaning, as it has been used to distinguish misdemeanors from felonies for a very long time). The legislative history is not particularly helpful. The Senate Report on the amendment stated in relevant part that it "[l]owers fine and imprisonment thresholds in the definition (from 5 years to 1 year . . .), thereby broadening the coverage of . . . theft . . .." S. Rep. No. 249, 104th Cong., 1996 WL 180026. An intent to broaden the coverage of the aggravated felony classification, however, is not necessarily an intent to include misdemeanors in that category. There is no evidence that Congress noticed that it was breaking the time-honored line between felonies and misdemeanors.

Because, as the government contends, the amended statute's definition of an aggravated theft felony refers to sentences actually imposed and not to potential sentences, it is still possible for a felon to avoid being an aggravated felon if he or she receives a six-month sentence for a theft crime with a maximum possible sentence over one year. Therefore, though Congress evidenced an intent to increase the scope of the statute, it did put some limit on the punitiveness of the change. Moreover, Graham's interpretation would not render the literal wording of the statute meaningless. Some one-year sentences would still

10

be aggravated felonies—those imposed for felonies, that is, for crimes with maximum terms of more than one year.

If we accepted Graham's argument, the affected set of defendants would be those sentenced to a full year for a misdemeanor covered by section 1101(a)(43). These are obviously the most serious misdemeanants, and we can see a rational reason that Congress might include them in the class of defendants worthy of extra punishment. Despite the force of Graham's argument, we are ultimately unwilling to cabin the clear import of the law to exclude from its ambit misdemeanors for which the maximum one-year sentence was imposed.

Congress has the power to define the punishment for the crime of reentering the country after deportation, and we conclude that Congress was defining a term of art, "aggravated felony," which in this case includes certain misdemeanants who receive a sentence of one year. Our decision would be much simpler if Congress had used the term "aggravated offense." However, rather than making the underlying offense conform to the label Congress erroneously used to describe section 1101(a)(43) as amended, we give effect to the definition of the underlying offense and ignore the label. This was the practice of the federal courts for many years under previous incarnations of federal law, as we demonstrate in the margin. 4 Congress

_____

4. 18 U.S.C. S 1, now repealed, stated: "Notwithstanding any Act of Congress to the contrary: (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony. (2) Any other offense is a misdemeanor." The problem that spurred its enactment was that Congress was occasionally less than exacting in its definition of federal crimes. Congress would pass a substantive criminal law, labelling it a "misdemeanor" but providing for five years' imprisonment. The Revisor's Note of 1948 noted that, at the time S 1 replaced its predecessor, there were at least thirty occurrences of such penalties whose labels were inconsistent with the punishments actually authorized. See 8 U.S.C.A. S 1 Revisor's Note, at 50 (1969).

When those inconsistencies were argued in federal court, courts generally held that the overarching felony/misdemeanor definition controlled, so that a particular statute's label would be overridden if it was inconsistent with the "real" definition of a felony or misdemeanor.

11

could avoid this confusion by reenacting the relevant
portion of 18 U.S.C. S 1, which would make clear that the
felony/misdemeanor labels in a particular criminal law are
less important than the imprisonment actually authorized
by that law.5

_____

See Loos v. Hardwick, 224 F.2d 442 (5th Cir. 1955) (treating a crime as
a felony despite statutory "misdemeanor" language because the term was
more than a year); Sheridan v. United States, 236 F. 305 (9th Cir. 1916)
(same); Hoss v. United States, 232 F. 328 (8th Cir. 1916) (same); United
States v. York, 131 F. 323 (C.C.S.D.N.Y. 1904) (treating a crime as a
misdemeanor despite statutory "felony" language because the crime had
not actually been made a felony); United States v. Green, 140 F. Supp.
117, 120 (S.D.N.Y. 1956) ("[S 1] provides. . . that if the allowable
punishment is one year or less, the crime is a misdemeanor. Thus, it is
the penalty which governs the classification and not any characterization
or classification given by the Common Law or by a statute which governs
the penalty."), aff 'd, 241 F.2d 631 (2d Cir. 1957), aff 'd, 356 U.S. 165
(1958). But see United States v. Chapman, 3 F. Supp. 900, 901 (S.D. Ala.
1931) (treating a crime labelled a "misdemeanor" in the substantive law
as a misdemeanor despite the fact that the maximum penalty was more
than a year, reasoning that the general rule only applied where the
specific statute at issue failed to label an offense). The "notwithstanding
any Act of Congress to the contrary" language, added in 1948 to the
1909 definition that was otherwise left untouched, affirmed the majority
view of the courts.

5. 18 U.S.C. S 1, which used to define felonies and misdemeanors, was
repealed in 1984 when 18 U.S.C. S 3559 replaced it. The legislative
history suggests that S 3559 was enacted to put the definitions of felony
and misdemeanor within the sentencing part of the statute and to create
subdivisions within the felony and misdemeanor categories, consistent
with the reformers' desire to create clear sentencing categories. Thus,
the
repeal seems to have been mostly a matter of housekeeping. See S. Rep.
No. 225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 1983 WL 25404
(Leg. Hist.) ("Section 3559 specifies how the classification system
created
in Section 3581(b) applies to offenses that are not specifically graded by
letter grade."). This interpretation is supported by the fact that S 1 was
repealed as unnecessary while the Senate Report went on to say that
proposed S 3559 had no counterpart in current federal law, because
federal law did not at the time classify within the felony and
misdemeanor categories. See id. That statement would only make sense
if the sole aim of the the switch from S 1 toS 3559 was the addition of
classes of felonies and misdemeanors to federal law.

12

The aggravated felon classification has serious consequences for those subject to it, as this case demonstrates. Many members of Congress have been prosecutors and criminal defense lawyers, with a likely respect for the venerable divide between felonies and misdemeanors. They might wish to revisit the issue or at least obviate the difficult question posed by this case with more careful drafting.6 However, because Graham's petit larceny sentence qualified him as an "aggravated felon," we will affirm the judgment.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit
_____

6. The Clerk of the Court is directed to send a copy of this opinion to the
Assistant Attorney General in charge of the Criminal Division, the Ranking Members and the Majority and Minority Counsel of the House and Senate Judiciary Committees.