

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-17-2004

# Khaimraj Singh v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-1532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"Khaimraj Singh v. Atty Gen USA" (2004). *2004 Decisions.* Paper 279.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/279

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

6th & Chestnut Streets
656 Public Ledger Building
Philadelphia, PA 19106

*Attorneys for Petitioner*

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-1532
_____

KHAIMRAJ SINGH

*Petitioner*

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of Orders of the
Board of Immigration Appeals
(Board No. A41-930-720)
_____

Argued June 28, 2004

Before: AMBRO, BECKER and
GREENBERG, *Circuit Judges*

(Filed September 17, 2004)

JAMES J. ORLOW
DAVID KAPLAN (ARGUED)
Orlow & Orlow

PETER D. KEISLER
Assistant Attorney General, Civil
Division
DAVID V. BERNAL
Assistant Director
ANTHONY P. NICASTRO (ARGUED)
Trial Attorney
CHRISTOPHER C. FULLER
LYLE D. JENTZER
United States Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, DC 20044

*Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge*.

Khaimraj Singh, a Guyanan national, petitions for review of a final order of removal grounded upon the determination that he is an aggravated felon on account of his conviction for touching the breast of his cousin, who was under sixteen years of age. The offense of conviction was 11 Del. C. § 767, "Unlawful sexual contact in the third degree," which provides:

A person is guilty of unlawful

sexual contact in the third degree when the person has sexual contact with another person or causes the victim to have sexual contact with the person or a third person and the person knows that the contact is either offensive to the victim or occurs without the victim's consent.

The question presented on this petition for review—whether Singh has been convicted of the aggravated felony of "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A)—turns on whether we must apply the so-called "formal categorical approach" announced in *Taylor v. United States*, 495 U.S. 575 (1990). Under that approach, an adjudicator "must look only to the statutory definitions of the prior offenses," and may not "consider other evidence concerning the defendant's prior crimes," including, "the particular facts underlying [a] conviction[]." *Id.* at 600. If we apply the formal categorical approach, Singh has not been convicted of the aggravated felony of sexual abuse of a minor because § 767 does not contain an element specifying the age of the victim. If we do not apply the formal categorical approach, Singh has been convicted of the aggravated felony of sexual abuse of a minor because the victim of his sex offense was, indeed, a minor.

Our jurisprudence in the aggravated felony area—twelve cases in all—is not a seamless web. In order to resolve the appeal we have found it necessary to analyze and synthesize this body of case law, and we do so at length, *see infra* Part

III.B. As will appear, a pattern emerges, causing us to conclude that, while the formal categorical approach of *Taylor* presumptively applies in assessing whether an alien has been convicted of an aggravated felony, in some cases the language of the particular subsection of 8 U.S.C. § 1101(a)(43) at issue will invite inquiry into the underlying facts of the case, and in some cases the disjunctive phrasing of the statute of conviction will similarly invite inquiry into the specifics of the conviction. But in this case, neither 8 U.S.C. § 1101(a)(43)(A) nor 11 Del. C. § 767 invite inquiry into the facts underlying Singh's conviction. Therefore, because *Taylor*'s formal categorical approach applies to Singh's case, we will grant the petition for review.

## I. Factual Background and Proceedings Before the Immigration Judge and Board of Immigration Appeals

Singh is a native and citizen of Guyana. He was admitted to the United States in June 1988 as an immigrant. About ten years later, he touched the breast of his cousin, who was under the age of sixteen. For this, the State of Delaware charged him under 11 Del. C. § 768, "Unlawful sexual contact in the second degree." Apparently as part of a plea agreement with the state prosecutor, Singh pled guilty to the lesser included offense of 11 Del. C. § 767, "Unlawful sexual contact in the third degree." On May 19, 1998, the Delaware Superior Court imposed a one-year suspended sentence.

2

This conviction, the government asserts, renders Singh an aggravated felon under 8 U.S.C. § 1101(a)(43)(A), which provides that "sexual abuse of a minor" is an aggravated felony.[1] Under 8

[1]"Sexual abuse of a minor" is but one of the dozens of aggravated felonies catalogued in the twenty-one subsections of 8 U.S.C. § 1101(a)(43). Because the discussion that follows in this opinion draws on many of those subsections, we rescribe the statute in full for the convenience of the reader:

The term "aggravated felony" means—
    (A) murder, rape, or sexual abuse of a minor;
    (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18);
    (C) illicit trafficking in firearms or destructive devices (as defined in section 921 of Title 18) or in explosive materials (as defined in section 841(c) of that title);
    (D) an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000;
    (E) an offense described in–
    (i) section 842(h) or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses);
    (ii) section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of Title 18 (relating to firearms offenses); or
    (iii) section 5861 of Title 26 (relating to firearms offenses);
    (F) a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year;
    (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year;
    (H) an offense described in section 875, 876, 877, or 1202 of Title 18 (relating to the demand for or receipt of ransom);

3

(I) an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography);

(J) an offense described in section 1962 of Title 18 (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed;

(K) an offense that—

(i) relates to the owning, controlling, managing, or supervising of a prostitution business;

(ii) is described in section 2421, 2422, or 2423 of Title 18 (relating to transportation for the purpose of prostitution) if committed for commercial advantage; or

(iii) is described in any of sections 1581-1585 or 1588-1591 of Title 18 (relating to peonage, slavery, involuntary servitude, and trafficking in persons);

(L) an offense described in—

(i) section 793 (relating to gathering or transmitting national defense information), 798 (relating to disclosure of classified information), 2153 (relating to sabotage) or 2381 or 2382 (relating to treason) of Title 18;

(ii) section 421 of Title 50 (relating to protecting the identity of undercover intelligence agents); or

(iii) section 421 of Title 50 (relating to protecting the identity of undercover agents);

(M) an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

(ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000;

(N) an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the

offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter

(O) an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph;

(P) an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of Title 18 or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent

(and no other individual) to violate a provision of this chapter;

(Q) an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more;

(R) an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year;

(S) an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year;

(T) an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed; and

(U) an attempt or conspiracy to commit an offense described in this paragraph.

U.S.C. § 1227(a)(2)(A)(iii), an alien convicted of an aggravated felony is removable. The Immigration Judge (IJ) agreed with the government's position, noting that "the sentencing order of the [Delaware] Court reflects clearly, under special conditions of probation, 'note: victim is under 16 years of age.'" Citing 18 U.S.C. § 3509(2) (which defines the age of majority as 18), the IJ explained that "the victim was under 16 years of age and, consequently, would be classified as a minor." The IJ then looked to 18 U.S.C. § 3509(8) for the definition of "sexual abuse," which includes "sexually explicit conduct":

> The term sexually explicit conduct includes touching of one's breast under [18 U.S.C. § 3509(9)(A)]. Consequently, the Court finds that the respondent has engaged in sexually explicit conduct of a child. Likewise, the Court would find that the respondent's conviction, notwithstanding the fact that the age of the victim is not specifically

---

The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996.

designated in the statute, has indeed . . . engaged in sexual abuse of a minor as defined in Title 18.

The Board of Immigration Appeals (BIA) affirmed the IJ's decision without opinion. *See* 8 C.F.R. § 1003.1(e)(4).[2] Under 8 U.S.C. § 1252(a)(2)(C) and our decision in *Drakes v. Zimski*, 240 F.3d 246, 247 (3d Cir. 2001), we have jurisdiction to consider our jurisdiction over this timely petition for review of a final decision of the BIA.

## II. Standard of Review

This case turns on a question of statutory interpretation—specifically, the meaning and application of the aggravated felony of "sexual abuse of a minor." As we noted in *Patel v. Ashcroft*, 294 F.3d

---

[2]Singh also challenges the BIA's procedure for affirmance without opinion. We approved these streamlining regulations in *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) (en banc), which was decided after Singh filed his opening brief. Although *Dia* may not dispose of Singh's nondelegation and judicial economy arguments against the streamlining regulations, those arguments would be better addressed to the Court en banc. At all events, our resolution of this case on alternative grounds avoids the need to confront the novel questions raised in Singh's challenge to the streamlining regulations.

465, 467 (3d Cir. 2002), "there is some confusion surrounding the proper standard of review in cases such as this." *Patel*, which was an aggravated felony case, discusses at length the role of *Chevron* deference in cases interpreting the Immigration and Nationality Act (INA) generally, and the aggravated felony statute of 8 U.S.C. § 1101(a)(43) in particular. In our most recent aggravated felony case, we described the scope of our *Chevron* deference thus:

> "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" [*Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002)] (quoting *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001)). If the statutory meaning is clear, our inquiry is at an end. *Id.* If the statutory meaning is not clear, we must try to discern Congress' intent using the ordinary tools of statutory construction. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987). "If, by employing traditional tools of statutory construction, we determine that Congress' intent is clear, that is the end of the matter." *Valansi*, 278 F.3d at 208 (quoting *Bell v. Reno*, 218 F.3d 86, 90 (2d Cir. 2000)). If we are unable to discern Congress' intent using the normal tools of statutory construction, we will generally give deference to the Board's interpretation, so long as it is reasonable. *Id.*

*Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir. 2004).

Canvassing the dozen aggravated felony cases decided by this Court, one indisputable and surprising pattern emerges: We have never affirmatively deferred to an interpretation by the BIA (or an IJ) of 8 U.S.C. § 1101(a)(43), i.e., of whether the crime at issue constitutes an aggravated felony. Many times we have not even discussed *Chevron* deference to the BIA, irrespective of whether we ultimately agreed or disagreed with the Board. *See Munroe v. Ashcroft*, 353 F.3d 225 (3d Cir. 2003); *Wilson v. Ashcroft*, 350 F.3d 377 (3d Cir. 2003); *Bovkun v. Ashcroft*, 283 F.3d 166 (3d Cir. 2002); *United States v. Graham*, 169 F.3d 787 (3d Cir. 1999). We also have suggested that we conduct *de novo* review because the question goes to our jurisdiction. *See Nugent v. Ashcroft*, 367 F.3d 162, 165 (3d Cir. 2004); *Valansi*, 278 F.3d at 207-08 (citing cases). Twice we have declined to reach the question of deference because we concluded that our result would be the same on deferential review as it would on plenary review. *See Patel*, 294 F.3d at 468; *Drakes v. Zimski*, 240 F.3d 246, 251 (3d Cir. 2001). In two cases, we acknowledged that we must defer to the BIA if the statute's meaning is ambiguous, but both times we held that the BIA's interpretation conflicted with the statute's plain meaning. *See Lee*, 368 F.3d at 224-25; *Valansi*, 278 F.3d at 208. In yet another case we affirmatively held that the

7

BIA's interpretation of 18 U.S.C. § 16, which is incorporated by reference in the aggravated felony statute, 8 U.S.C. § 1101(a)(43)(F), was *not* subject to the general principles of *Chevron*, but that, even if it was, the specific interpretation at issue was unreasonable and therefore not entitled to deference. *See Francis v. Reno*, 269 F.3d 162, 168 & n.8 (3d Cir. 2001). Finally, two decisions appear to be more deferential to the BIA. In *Gerbier v. Holmes*, 280 F.3d 297, 310 (3d Cir. 2002), we found the BIA's interpretation "persuasive" (hardly a strong general endorsement), while in *Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001), we stated that "if a statute administered by the INS is ambiguous, and the BIA has provided a reasonable interpretation of its language, we must simply ask whether the BIA's construction is a permissible one." Even in *Steele*, however, we looked more closely into the BIA's interpretation, finding it "troublesome," but we "assume[d] its validity" because even the BIA's own interpretation of the statute did not support its disposition of the case. 236 F.3d at 136 & n.5.

Why then have we never found it necessary and appropriate to defer to the BIA's or IJ's interpretation of 8 U.S.C. § 1101(a)(43)? First, as we explained in *Francis*, the interpretation and exposition of criminal law is a task outside the BIA's sphere of special competence. *See* 269 F.3d at 168; *see also Drakes*, 240 F.3d at 250 ("*Chevron* deference is not required where the interpretation of a particular statute does not 'implicate[] agency

expertise in a meaningful way' but presents instead 'a pure question of statutory construction for the courts to decide.'" (quoting *Sandoval v. Reno*, 166 F.3d 225, 239-40 (3d Cir. 1999) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987))) (alteration in original)). Second, we have been mindful, as in *Nugent*, 367 F.3d at 165, and *Valansi*, 278 F.3d at 207-08, that although the statute is part of Title 8, and not Title 28, of the United States Code, it nonetheless controls our jurisdiction (via 8 U.S.C. § 1252(a)(2)(C)) and we normally consider jurisdictional matters *de novo*.

Moreover, here the IJ offered no reason for his decision not to apply *Taylor*'s categorical approach; the BIA, by affirming without opinion, gave no considered and authoritative agency-wide interpretation of the statute; and now on petition for review, the government's entire position on deference consists of a single citation to an admittedly vague comment from this Court in *Patel*, 294 F.3d at 467 ("[S]ome deference is still required under *Chevron*, even though we are reviewing a purely legal question such as the BIA's interpretation of a criminal statute."). Under all these circumstances, we conclude that the IJ's summary application of § 1101(a)(43)(A)—it can hardly be described as a full-blown reasoned interpretation—is not entitled to deference. As we have done in previous cases, however, we will here expressly reserve decision on whether some BIA interpretations of § 1101(a)(43) are entitled to deference.

8

### III. Discussion

Some of our cases interpreting 8 U.S.C. § 1101(a)(43) have employed the rule of *Taylor*, described there as the "formal categorical approach," 495 U.S. at 600. *See, e.g.*, *Francis*, 269 F.3d at 171-72. *Taylor* addressed the meaning and application of the term "burglary" in 18 U.S.C. § 924(e), which imposes enhanced sentences on defendants convicted under the unlawful-possession-of-a-firearm statute, 18 U.S.C. § 922(g), when the defendant has three prior convictions for specified offenses, including "burglary." *Taylor*'s analysis can be readily imported here, because 8 U.S.C. § 1101(a)(43) is similar to 18 U.S.C. § 924(e) in that it too enumerates offenses, conviction of which places an alien in the category of "aggravated felon." *Taylor* put the "general issue" in interpreting this sort of statute as follows:

> whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes. The Courts of Appeals uniformly have held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.

495 U.S. at 600. Citing "the practical difficulties and potential unfairness [to a defendant] of a factual approach," *id.* at 601, the *Taylor* Court adopted the "formal categorical approach."

The facts of *Taylor* provide an apt illustration of the principle at work: Taylor had been twice convicted of second degree burglary in Missouri. Under Missouri law, second degree burglary encompassed several discrete sets of statutory elements. As the Court explained, "All seven offenses required entry into a structure, but they varied as to the type of structure and the means of entry involved." *Id.* at 578 n.1. Compared with the definition of "generic burglary" adopted by the Court—"convict[ion] of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," *id.* at 599—not all variants of Missouri second degree burglary qualified under the federal sentencing enhancement statute. Since the formal categorical approach does not permit looking beyond the literal elements of the statute (i.e., to the facts supporting the convictions), the Court could not say that Taylor had been previously convicted of crimes encompassing the elements of generic burglary. *See id.* at 602. Accordingly, the Court remanded for further development on the question of "which of [the Missouri second degree burglary] statutes were the bases for Taylor's prior convictions." *Id.* The inquiry was limited to the statute of conviction, however, as the formal categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of

9

the prior offense." *Id.* The *Taylor* Court also acknowledged that, under limited circumstances, resort to the charging instrument may be permissible: "[The formal categorical approach] may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the [necessary] elements." *Id.*

The questions presented in this case are readily apparent: Does *Taylor*'s formal categorical approach apply to "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), and if it does, does a conviction under 11 Del. C. § 767 nonetheless qualify as a conviction for sexual abuse of a minor? We find it more efficient to address the second question first.

A. Under the Formal Categorical Approach of *Taylor*, Does a Conviction Under

11 Del. C. § 767 Qualify as a Conviction for "Sexual Abuse of a Minor"?

The government first argues that, even under the formal categorical approach, a conviction under 11 Del. C. § 767 is a conviction for sexual abuse of a minor. To evaluate this argument, we follow the Supreme Court's two-step approach in *Taylor*, where it first construed the term "burglary" in the federal statute, 495 U.S. at 590-99, and then compared the elements of the Missouri statutes to the federal definition, *id.* at 602. The IJ looked to 18 U.S.C. § 3509(2), (8), and (9) to define "sexual abuse of a minor." While we have no quarrel with this approach, it is

unnecessary for our purposes to give a comprehensive definition of "sexual abuse of a minor," and we reserve decision on that question. It is sufficient to say that "sexual abuse of a minor" entails some conduct involving a minor, i.e., someone under the age of eighteen.

This is enough to defeat the government's argument, for § 767 says nothing whatsoever about the age of the victim. In full, the statute under which Singh was convicted reads:

> A person is guilty of unlawful sexual contact in the third degree when the person has sexual contact with another person or causes the victim to have sexual contact with the person or a third person and the person knows that the contact is either offensive to the victim or occurs without the victim's consent.

Since a finding of the age of the victim is not required for conviction, § 767 does not appear to be an aggravated felony (or at least not the aggravated felony of sexual abuse of a minor).

In the face of the literal and unambiguous text of § 767, the government argues that the statute nonetheless criminalizes sexual abuse of a minor. Of course it is irrelevant that sexually abusing a minor may be *sufficient* for conviction under the statute; what matters is whether such conduct is *necessary* for such a conviction. The government seems to argue that the overall statutory scheme in Delaware establishes

10

that sexual abuse of a minor is necessary for a conviction under § 767. Even assuming that appeals to statutes other than the statute of conviction are within the bounds of the formal categorical approach, we still cannot agree with the government's position.

10 Del. C. § 922(a)(19) provides the Delaware Family Court with exclusive original criminal jurisdiction over "unlawful sexual conduct in the third degree against a child under 11 Del. C. § 767." Similarly, 11 Del. C. § 1112(b)(4)(A) defines "sexual offender" as a person who has been convicted of "any sexual offense upon a child under 16 years of age under § 767, § 768, § 769, § 770, § 771, § 772, § 773 . . . ." The government would have us read these provisions as definitions of § 767. We do not agree. There are at least two problems with the government's approach. First, "against a child" and "upon a child," in 10 Del. C. § 922(a)(19) and 11 Del. C. § 1112(b)(4)(A), respectively, are better read not as definitions of Del. Code Ann. tit. 11, § 767, but rather as qualifications or limitations on the § 767 convictions that are intended to be within the scope of the jurisdictional and sex offender statutes. Unless these phrases are read as qualifiers, they are superfluous—why not, in § 1112(b)(4)(A), simply omit "upon a child under 16 years of age" if the statutes referred to already incorporate such a notion?

A second and independent problem with the government's proposed reading is that it leads to absurdities elsewhere in the statutory scheme. For example, 11 Del. C. §§ 767-773 are the gamut of traditional sex offenses under Delaware law, from misdemeanor sexual assault to first degree rape. Adopting the government's argument would imply not only that § 767 is an offense against a child, but also that §§ 768-773 are as well. This would have the astonishing result that *all* sex offenses in Delaware (as Delaware does not define any general sex offenses outside this list) require that the victim be a child. These problems only reinforce our conclusion from the plain meaning of the statute: 11 Del. C. § 767 does not include as an element that the victim be a minor, and accordingly, under the formal categorical approach of *Taylor*, Singh does not stand convicted of sexual abuse of a minor.

## B. Does the Formal Categorical Approach of *Taylor* Apply to the Aggravated Felony of "Sexual Abuse of a Minor"?

Because the IJ's decision cannot stand if we apply *Taylor*'s formal categorical approach, we must turn to the government's fallback argument that the formal categorical approach does not apply to "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A). If the government is free from the strictures of the formal categorical approach, we would simply review the IJ's decision under the deferential substantial evidence standard, evaluating whether the factual record before the IJ could fairly support the conclusion that Singh was convicted of sexual abuse of a minor. *See Dia*, 353 F.3d at 247-49 (describing the substantial

11

evidence standard). As the record supports this conclusion—indeed, Singh concedes that, as a factual matter, he was convicted for touching the breast of his minor cousin—we would dismiss the petition if the formal categorical approach did not apply here. But for the reasons that follow, we conclude that the formal categorical approach does apply.

### 1. Our prior aggravated felony jurisprudence

We have decided a dozen cases implicating 8 U.S.C. § 1101(a)(43), and at times we have applied the formal categorical approach of *Taylor*, and at other times we have not. (In the latter instances, though we have never explicitly considered and rejected *Taylor*'s approach, our decisions cannot be fairly read as employing the formal categorical approach.) The question here, then, is whether sexual abuse of a minor under 8 U.S.C. § 1101(a)(43)(A) is more akin to those provisions of 8 U.S.C. § 1101(a)(43) to which we have applied the formal categorical approach, or to those to which we have not. We begin with a comprehensive survey of this Court's aggravated felony jurisprudence. The United States Supreme Court has not decided any case involving 8 U.S.C. § 1101(a)(43), so we consider only our own cases in this survey. Three of the twelve cases we have decided, *see supra* Part II, do not even implicitly involve the question whether to use *Taylor*'s formal

categorical approach.[3] Thus, in the sections that follow, we address the other nine cases, which all (explicitly or implicitly) take a position on *Taylor*'s applicability.

### a. Cases employing the formal categorical approach of *Taylor*

We expressly invoked and applied *Taylor*'s formal categorical approach in *Francis*. There, the question presented was whether "a state misdemeanor conviction for vehicular homicide is a 'crime of violence' within the meaning of 18 U.S.C. § 16," 269 F.3d at 164, which is incorporated by reference in the definition of "aggravated felony," 8 U.S.C. § 1101(a)(43)(F). We concluded that the

---

[3]Two of these cases—*Lee* and *Patel*—turn on whether certain federal criminal offenses are directly identified in 8 U.S.C. § 1101(a)(43). *See Lee*, 368 F.3d at 224 (holding that 8 U.S.C. § 1101(a)(43)(M)(ii) is the exclusive category for federal tax offenses, and thus that federal tax offenses are not covered by 8 U.S.C.§ 1101(a)(43) (M)(i)); *Patel*, 294 F.3d at 470 (holding that the reference in 8 U.S.C. § 1101(a)(43)(N) to "alien *smuggling*" does not overcome the specific cross-reference in that section to statute criminalizing alien *harboring*, of which petitioner had been convicted). The third case, *Graham*, resolves a scrivener's error in 8 U.S.C. § 1101(a)(43)(G) and implicates *Taylor* only indirectly. We return to *Graham infra* Part III.B.1.c.

petitioner's conviction was not a crime of violence under 18 U.S.C. § 16, and therefore that he was not an aggravated felon. Although we were able to reach this result on an analysis of 18 U.S.C. § 16 that did not implicate *Taylor*, *Francis*, 269 F.3d at 168-71, we also held in the alternative that, under the formal categorical approach, Francis's conviction did not satisfy 18 U.S.C. § 16(b)'s requirement that a crime of violence be one that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

We explained that under the formal categorical approach,

> we must look to Pennsylvania's definition of homicide by vehicle. . . . 75 Pa. C.S.A. § 3732 provides:

> Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under influence of alcohol or controlled substance) is guilty of h o m i c i d e   b y   v e h i c l e,   a misdemeanor of the first degree, when the violation is the cause of death.

> 75 Pa. C.S.A. § 3732.

*Francis*, 269 F.3d at 171-72. We

continued:

> On its face, homicide by vehicle is certainly not an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The BIA acknowledged that § 3732 involves a range of behavior that "may or may not" fall under § 16(b).

The categorical approach does "permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the relevant] generic [offense]." *Taylor*, 495 U.S. at 602. Here, the criminal complaint stated:

> Southbound on Route 95 in the vicinity of Comly Street the defendant unintentionally caused the death of the decedent # 1 Harry B. Rutter, Driver of vehicle # 1, by operating a 1985 Chevrolet Caprice, Pa. License ADB 7268, *while his operating privilege was suspended, and in such a manner* as to cause a eight vehicle accident between four cars, one van, and three tractor trailers and a near miss by a tanker truck carrying 8000 gallons of gasoline, causing the deaths of two people and injuring a third.

(emphasis added).

Francis was therefore charged with the

13

"unintentional" conduct, of operating an automobile in such a manner as to cause a car accident resulting in two deaths.

*Id.* at 172 (some citations omitted).

As Francis's predicate "violation of [the] law" for purposes of 75 Pa. Cons. Stat. § 3732 was driving with a suspended license, and not something that "by its nature, involves a substantial risk [of] physical force," 18 U.S.C. § 16(b), we could not agree with the BIA that his offense was a crime of violence. Significantly, we disagreed with the BIA's conclusion that Francis's conduct involved a substantial risk of physical force because it was reckless, stating: "It may well have been [reckless]. However, recklessness was not charged, and he was not convicted of an offense requiring that mens rea." *Francis*, 269 F.3d at 173. In sum, the BIA reasoned from the facts supporting Francis's conviction, but we felt constrained to grant the petition for review by applying *Taylor*'s formal categorical approach and confining our inquiry to the statute of conviction, illuminated by the charging instrument.

Three other cases—*Steele*, *Gerbier*, and *Wilson*—apply *Taylor* through their use of the "hypothetical federal felony" (or "hypothetical federal conviction") approach.[4] This method was developed by the BIA in applying 8 U.S.C. § 1101(a)(43)(B), which categorizes as an aggravated felony "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." In *Steele*, our first case to examine the hypothetical federal felony approach, we explained it this way:

Section 924(c)(2) of Title 18 defines "drug trafficking crime" as meaning "any felony punishable under the Controlled Substance Act[,] . . . the Controlled Substance Import and Export Act[s] . . . or the Maritime Drug Law Enforcement Act . . . ." Accordingly, the BIA finds within [this] category of aggravated felony convictions any federal conviction for a violation of one of the specified statutes that is a felony conviction under federal law, i.e., a conviction for an offense punishable by imprisonment for over one year. *See* 18 U.S.C. § 3559. More relevant for present purposes, the BIA understands this . . . category to encompass convictions for state offenses, however characterized by the state,

---

[4]The hypothetical federal felony approach is only one "route" to classification as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B); "illicit trafficking in a controlled substance"

qualifies as well. *See Gerbier*, 280 F.3d at 313. In practice, "illicit trafficking in a controlled substance" works very much like "crime of violence" (as discussed *supra* in *Francis*), so we will discuss it no further than to say that our decisions involving it are consistent with *Taylor*'s categorical approach.

if those offenses would be "punishable" under one of the three specified federal statutes if federally prosecuted, so long as the hypothetical federal conviction would be a felony under federal law, i.e., would be punishable by a term of imprisonment of over one year.

This hypothetical federal conviction approach "require[s] a comparison between the elements of the [state] drug offense and [the elements of] a federal drug provision referenced in 18 U.S.C. § 924(c)(2) . . . ." *Matter of Davis*[, 20 I. & N. Dec. 536, 544 (BIA 1992)]. Since the basis for the incapacities under the Immigration Act is "convict[ion] of an aggravated felony," 8 U.S.C. § 1229b(a), the Board looks to what the convicting court must necessarily have found to support the conviction and not to other conduct in which the defendant may have engaged in connection with the offense. Thus where, as here, the Service is relying on a state misdemeanor conviction, the requirements of this . . . category of "aggravated felony convictions" are "satisfied [only] by proving a conviction that includes all the elements of [a felony] offense for

which an alien 'could be convicted and punished' under the cited federal laws." *Matter of Barrett*[, 20 I. & N. Dec. 171, 174 (BIA 1990)].

*Steele*, 236 F.3d at 135-36 (some alterations in original). The hypothetical federal felony approach is essentially the formal categorical approach of *Taylor*, as applied to a specific federal statute.

Though we did not actually approve the hypothetical federal felony approach in *Steele*, we accepted it *arguendo*, because even it did not support the BIA's disposition—the proposed hypothetical federal felony required a finding of an additional, prior drug conviction, a prior conviction that, though existing in fact, had not been proven in the course of Steele's state criminal proceedings. *Id.* at 137. We thus granted Steele's petition for review. A little over a year later, in *Gerbier*, we did adopt the BIA's hypothetical federal felony approach to 8 U.S.C. § 1101(a)(43)(B). 280 F.3d at 308-11. But as in *Steele*, Gerbier's status as a recidivist had not been litigated or otherwise decided in his state criminal proceeding, and we therefore granted his petition for review. *Id.* at 317.

In *Wilson*, 350 F.3d 377, the third case in our hypothetical-federal-felony trilogy, we again granted the petition for review. There, the proposed hypothetical federal felony—21 U.S.C. § 841(a)(1), which is the general federal felony criminal prohibition on unauthorized manufacture, distribution, and possession with intent to

distribute of controlled substances—included an escape clause making distribution of "a small amount of marihuana for no remuneration" a misdemeanor. *See* 21 U.S.C. § 841(b)(1)(D) and (b)(4). Wilson had possessed with the intent to distribute a small amount of marijuana, a misdemeanor under N.J. Stat. Ann. § 2C:35-5(b)(11).[5] *Wilson*, 350 F.3d at 381. He argued to this Court that, because his state conviction did not necessarily imply that he sought remuneration for his distribution, it could not therefore be shown that his conduct would have been a felony under federal controlled substance law—he might have been able to invoke the escape clause. *Id.*

The government countered that Wilson's conviction was for *possession*, not *distribution* (though both distribution and possession-with-intent were included in New Jersey's law, *see supra* note 5), and that he therefore would not have been eligible for the escape clause. We rejected the government's invitation to look beyond the New Jersey statute itself, citing *Steele* and *Gerbier* for the proposition that "in evaluating whether a state violation is

analogous to a federal felony, we look to the elements of the statutory state offense, not to the specific facts." *Wilson*, 350 F.3d at 381. "Since the state statutory elements would be satisfied by proof of either distribution or possession with intent to distribute, we cannot draw the federal analogy by presuming that the statute only covers possession." *Id.* at 382. *Wilson* may thus represent the zenith of our faithfulness to *Taylor*.

Two other cases also follow *Taylor*'s formal categorical approach—though only silently (in the case of *Bovkun*) or weakly (in the case of *Drakes*). Although we did not cite *Taylor* in *Bovkun*, we plainly followed the formal categorical approach. There, the petitioner had been convicted of making terroristic threats under Pennsylvania law,[6] and the government

---

[5]N.J. Stat. Ann. § 2C:35-5(a)(1) provides that it is unlawful "[t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog." N.J. Stat. Ann. § 2C:35-5(b)(11) provides that marijuana is such a controlled substance.

[6]In full, 18 Pa. Cons. Stat. § 2706 (1998) (in effect at the time of Bovkun's conviction) provided:

> A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

sought to classify him as an aggravated felon under 8 U.S.C. § 1101(a)(43)(F) (incorporating 18 U.S.C. § 16 by reference), for committing "a crime of violence."[7] Bovkun argued that "mere public inconvenience" would not qualify as a crime of violence, but we rejected his argument because it confused the actus reus of the offense ("threat[] to commit a crime of violence") and the mens rea ("with intent to . . . or reckless disregard of . . ."). *Bovkun*, 283 F.3d at 170. We held that it was the actus reus of the state offense that had to be aligned with the federal statute, and on that basis we concluded that a Pennsylvania conviction for making terroristic threats was a crime of violence as defined in 18 U.S.C. § 16.

Finally, in *Drakes*, we considered 8 U.S.C. § 1101(a)(43)(R), which classifies as an aggravated felony "an offense relating to . . . forgery." Though the facts were not entirely clear, the petitioner had been convicted of second-degree forgery under Delaware law in connection with providing a false name to the Delaware State Police during a traffic stop.[8] As noted above, *see supra* Part III.A (discussing *Taylor*'s two-step approach), *Taylor* requires both interpretation of the federal statute describing the offense, and a comparison with the statute of criminal conviction. Though most of our aggravated felony cases have turned on the

---

[7]In relevant part, 18 U.S.C. § 16(a) defines a "crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

[8]In relevant part, 11 Del. C. § 861 provides:

> (a) A person is guilty of forgery when, intending to defraud, deceive or injure another person, or knowing that the person is facilitating a fraud or injury to be perpetrated by anyone, the person:
> (1) Alters any written instrument of another person without the other person's authority; or
> (2) Makes, completes, executes, authenticates, issues or transfers any written instrument which purports to be the act of another person, whether real or fictitious, who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case or to be a copy of an original when no original existed; or
> (3) Possesses a written instrument, knowing that it was made, completed or altered under circumstances constituting forgery.

17

second step, *Drakes* concentrated more on the first. In *Drakes*, we discussed at length the meaning of "forgery" in 8 U.S.C. § 1101(a)(43)(R). *See* 240 F.3d at 248-50. Upon determining that "Congress evidenced an intent to define forgery in its broadest sense," *id.* at 249, it became easy to conclude that 11 Del. C. § 861 came within the wide sweep of the offenses described in 8 U.S.C. § 1101(a)(43)(R), *see Drakes*, 240 F.3d at 250. Thus *Drakes* only briefly touched on *Taylor*'s second step—the formal categorical approach as we have been discussing it.

b. Cases not employing the formal categorical approach of *Taylor*

We turn now to the cases in which we did not confine ourselves to the formal categorical approach of *Taylor*. All three such cases—*Nugent*, *Munroe*, and *Valansi*—concerned 8 U.S.C. § 1101(a)(43)(M)(i), which defines as an aggravated felony an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." In all three cases, the relevant criminal statute did not include a "loss greater than $10,000" element. *See Nugent*, 367 F.3d at 168 n.2 (quoting 18 Pa. Cons. Stat. § 3922(a)[9]); *Munroe*, 252

F.3d at 226 (citing N.J. Stat. Ann. 2C:20-4[10]); *Valansi*, 278 F.3d at 210 (quoting 18

---

> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or
> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

[10]In full, N.J. Stat. Ann. 2C:20-4 provides:

> A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:
> a. Creates or reinforces a false impression, including false impressions as to law,

---

[9]In full, 18 Pa. Cons. Stat. § 3922(a) provides:

> A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

b. Prevents another from acquiring information which would affect his judgment of a transaction; or

c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing or exaggeration by statements unlikely to deceive ordinary persons in

U.S.C. § 656[11]).[12] Yet in these cases we expressly rested our holding on the

the group addressed.

[11]In relevant part, 18 U.S.C. § 656 provides:

> Whoever, being an officer, director, agent or employee of, or connected in any capacity with any . . . national bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank . . . shall be [fined and/or imprisoned].

We also note that in Valansi's plea agreement, she stipulated (for Sentencing Guidelines purposes) only that the value of the embezzled funds "was in excess of $1,000." *Valansi*, 278 F.3d at 206.

[12]Although none of these statutes has an amount-of-loss element (i.e., some minimum threshold amount of loss that must be met for a conviction), there are cognate statutes that do. *See, e.g.*, Cal. Penal Code § 487(a) (grand theft is committed "[w]hen the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400)"); Wash. Rev. Code § 9A.56.030(1)(a) (theft in the first degree is theft of "[p]roperty or services which exceed(s) one thousand five hundred dollars in value other than a firearm").

19

underlying facts about the amount of loss involved: In *Nugent*, 367 F.3d at 169, the bad check at issue was in the amount of $4831.26 (and thus insufficient to support the aggravated felony classification); in *Munroe*, 353 F.3d at 226, several bad checks written by the petitioner totaled in excess of $10,000 (and thus were sufficient to support the aggravated felony classification).

*Valansi*, in which the petitioner had embezzled over $400,000 in cash and checks in her capacity as a bank teller, 278 F.3d at 205, bears further discussion. The monetary threshold was clearly reached in *Valansi*. *See* 278 F.3d at 209 ("Valansi does not dispute that her conviction satisfies the $10,000 monetary requirement."). The case turned instead on whether Valansi's crime "involve[d] fraud or deceit." In an extensive discussion of 18 U.S.C. § 656, the Court focused on the *mens rea* requirement that had been judicially imposed on the statute: The embezzler must do so "with the intent to injure or defraud the bank." *Valansi*, 278 F.3d 210 (citing *United States v. Schoenhut*, 576 F.2d 1010, 1024 (3d Cir. 1978) (citing *United States v. Schmidt*, 471 F.2d 385 (3d Cir. 1972))). We held that this disjunctive *mens rea* requirement—*either* intent to defraud *or* intent to injure suffices—put the statute with one foot in 8 U.S.C. § 1101(a)(43)(M)(i) and one foot out:

> The plain meaning of § 1101(a)(43)(M)(i) defines an aggravated felony as an offense that has fraud or deceit as at least one

required element. Some but not all convictions under 18 U.S.C. § 656 qualify as an aggravated felony under that definition: a conviction for embezzlement with specific intent to defraud qualifies as an offense involving fraud or deceit, and thus an aggravated felony; a conviction with only the specific intent to injure does not.

*Valansi*, 278 F.3d at 217.

Under a strict reading of *Taylor*'s formal categorical approach, this would be the end of the story, because a conviction under 18 U.S.C. § 656 does not necessarily establish fraudulent intent any more than Singh's conviction under 11 Del. C. § 767 necessarily establishes sexual abuse of a minor (because, after all, some but not all convictions under 11 Del. C. § 767 involve a minor victim). The *Valansi* panel went on, however:

> We have cautioned that where "a criminal statute on its face fits the INA's deportability classification . . . [,][t]o go beyond the offense as charged and scrutinize the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in the face of the jurisdiction limiting language of IIRIRA." *Drakes*, 240 F.3d at 247-48. However, in this case we have determined that the criminal statute does not fit squarely within the INA's deportability classification because some, but not all, of the convictions under 18 U.S.C. § 656 qualify as offenses involving fraud or deceit. Because we are unable to

determine from the face of the statute whether Valansi's conviction is among those that qualify as an aggravated felony, we must take the additional step of examining the underlying facts to determine whether Valansi pled guilty to an offense involving fraud or deceit.

*Valansi*, 278 F.3d at 214 (alterations in original). Ultimately, we concluded that

> [i]n Valansi's case, the specific intent to defraud was not established. It appears that Valansi was counseled to avoid admitting to that intent, and the plea colloquy fails to pin down the *mens rea* element sufficiently for us to conclude that Valansi acted with the intent to defraud rather than to injure her employer.

*Id.* at 217. Accordingly, we granted the petition for review.

In dissent, Judge Scirica concluded that embezzlement under 18 U.S.C. § 656 is always a crime of fraud or deceit, and therefore had no need to analyze the intent-to-defraud/intent-to-injure distinction. While this seems more consistent with the formal categorical approach of *Taylor*, Judge Scirica's dissent still relies on (1) the plea colloquy (to establish that Valansi committed embezzlement, and not "abstract[ion], purloin[ing], or . . . misappli[cation]"), and (2) the factual record (to establish the fiduciary relationship between Valansi and her employing bank necessary to satisfy his definition of embezzlement). Both steps are beyond the strict scope of *Taylor*'s categorical approach. Thus, whatever disagreements there were within the panel in *Valansi*, all agreed that the case required a look beyond the literal elements of 18 U.S.C. § 656.

### c. A governing principle?

Our survey complete, the question we now pose is whether these decisions—some applying *Taylor*, some not—can be reconciled under a governing principle. We believe that they can. As *Taylor* itself demonstrates, there are two facets to these cases: the federal statute enumerating categories of crimes on the one hand (the "enumerating statute"), and the criminal statute of conviction, whether federal or state, on the other (the "statute of conviction"). While *Taylor*'s formal categorical approach presumptively applies in comparing the two, under certain conditions, both the enumerating statute and the statute of conviction can require a departure from the formal categorical approach.

In the case of the enumerating statute, a departure from the formal categorical approach seems warranted when the terms of the statute invite inquiry into the facts underlying the conviction at issue. The qualifier "in which the loss to the victim or victims exceeds $10,000" in 8 U.S.C. § 1101(a)(43)(M)(i) is the prototypical example—it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue. This principle explains our holdings in *Nugent* and *Munroe*. Another example would be an enumerating statute specifying crimes "committed within the last two years."

21

Such a statute could not be read to cover only crimes which have "within the last two years" as an element; instead, a court would read "within the last two years" as a limiting provision on crimes that would otherwise qualify.

In contrast, cases interpreting relatively unitary categorical concepts—like "forgery" (*Drakes*), "burglary" (*Taylor* itself) or "crime of violence" (*Francis* and *Bovkun*)—do not look to underlying facts because the enumerating statute does not invite any such inquiry. Likewise, the hypothetical federal felony trilogy (*Steele*, *Gerbier*, and *Wilson*) asks only whether the elements of a federal criminal statute can by satisfied by reference to the actual statute of conviction; this presents no invitation to depart from *Taylor*'s formal categorical approach and examine the underlying facts.

Though we have little case law on point, the contrast we have described appears to be mirrored in the references in 8 U.S.C. § 1101(a)(43) to the duration of sentences. Correcting for the scrivener's error in 8 U.S.C. § 1101(a)(43)(G), we held in *Graham*, 169 F.3d at 791, that that section specifies theft and burglary offenses "for which the term of imprisonment [imposed is] at least one year." This obviously invites an inquiry into the sentence actually imposed on the alien, rather than a categorical inquiry into the statutory punishment for the offense. Similarly, provisions like 8 U.S.C. § 1101(a)(43)(S), which classifies as an aggravated felony certain obstruction of justice offenses "for which the term of

imprisonment is at least one year," invites inquiry into the alien's actual sentence. *See Graham*, 169 F.3d at 790-91. In contrast, provisions like 8 U.S.C. § 1101(a)(43)(J), which classifies as an aggravated felony certain racketeering and gambling offenses "for which a sentence of one year imprisonment or more may be imposed," seem to direct inquiry toward the statutory sentencing scheme, not the alien's actual sentence. *See Graham*, 169 F.3d at 790-91.

Turning to the statute of conviction, there are also cases where a look into the underlying facts—or at least the charging instrument—is called for. *Valansi* is a good example of such a case: There, the statute of conviction was phrased in the disjunctive—a *mens rea* of *either* intent to defraud *or* intent to injure would suffice for conviction—which, in our view, called for an exploration of which of the alternative elements was the actual basis for conviction. Statutes phrased in the disjunctive are akin to, and can be readily converted to, statutes structured in outline form, with a series of numbered or letter elements. *See, e.g.*, statutes cited *supra* notes 8-10. Such statutes may sometimes more clearly invite further inquiry into exactly which subsection the defendant violated. The exercise of analyzing disjunctive statutes for an invitation to further inquiry is much more difficult than that described in the preceding paragraphs, for it poses the vexing question of how far below the judgment or plea colloquy the court may look. The cases are few and the jurisprudence is not clear. However, in the hope that it may shed some light on this

troublesome area, we will do our best to analyze the problem.

We have used a numbered subsection of such a statute as a statute of conviction for purposes of the *Taylor* inquiry. *See Wilson*, 350 F.3d at 381 (citing N.J. Stat. Ann. § 2C:35-5(b)(11), which specifically criminalizes marijuana). In *Wilson*, however, the numbered paragraphs of § 2C:35-5(b) were distinct offenses carrying separate penalties, not alternate types of conduct that constituted the same offense. The lesson there is that sometimes disjunctive parts of statutes of conviction represent distinct offenses, with distinct punishments. Where different crimes with different penalties are involved, under the categorical approach, further inquiry is clearly invited into which particular crime the petitioner was actually convicted of.

In other statutes, disjunctive wording or outline formatting simply describes variations of the same offense, with no difference in punishment and no distinction on the judgment of conviction. Even here, though, further inquiry might be warranted, as we found in *Valansi*, because the face of the statute might not make clear whether the conviction qualifies as an aggravated felony. It is not clear that only those disjunctions reflected in the penalty or the judgment of conviction are relevant for the purposes of § 1101(a)(43); where some variations of the crime of conviction meet the aggravated-felony requisites and others do not, we have thus allowed further inquiry to see which variation was actually committed.

*Taylor* itself, in some ways, provides an example. Taylor was convicted of second-degree burglary under some section of Mo. Rev. Stat. § 560 (1969); the Court remanded for consideration of whether he was convicted under §§ 560.045, .050, .055, .060, .070, .075, or .080. *Taylor*, 495 U.S. at 578 n.1. These seven separate statutory sections, each of which contained different factual predicates for the same crime with the same penalty, are in practice very similar to a single statute defining a crime, with seven numbered subsections containing alternate factual predicates. And in *Taylor*, the Supreme Court found that this division invited further inquiry.

Since any statute that is phrased in the disjunctive can be readily converted to outline form, it would be strange to think that Congress intended the application of the categorical approach to turn on the typography used by the statute's drafters. Commonly, the best way to resolve the question raised by a conviction under a statute phrased in the disjunctive, or structured in outline form, will be to look to the charging instrument or to a formal guilty plea (as we did in *Valansi*, for example). But even in such cases, we have not taken the further step of looking to facts outside the charging instrument or further plea; we leave for another day the question whether statutes phrased in the disjunctive invite such inquiry beyond a charging instrument or a formal plea.

As suggested above, our jurisprudence is not a seamless web. In *Wilson*, we did not conduct any further inquiry into the

underlying facts of the conviction, even though the statute at issue was phrased in the disjunctive. As discussed above, the petitioner had been convicted under N.J. Stat. Ann. § 2C:35-5(a)(1), which made it unlawful "[t]o manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, [certain substances]." Despite this disjunctive phrasing, we declined to examine whether Wilson had engaged in distribution or possession with the intent to distribute. Subject to our discussion in the margin,[13] this may be in tension with our earlier decision in *Valansi*. But there may also be other cases in which a statute phrased in the disjunctive would not invite further inquiry; we cannot with great confidence draw any general rule on this point from our cases.

At all events, for purposes of deciding

Singh's petition, we need not resolve the matter, because Singh's statute of conviction is not phrased in the disjunctive in a relevant way. The statute is phrased in the disjunctive, both with respect to its *actus reus* (which can be either (1) sexual contact or (2) causing sexual contact) and its *mens rea* (which can be either (a) knowing that the contact is offensive to the victim, or (b) knowing that the contact occurs without the victim's consent). But none of this gives insight into the question whether 11 Del. C. § 767 constitutes "sexual abuse of a minor" because, though any combination of *actus reus* and *mens rea* seem to suffice as the *actus reus* and *mens rea* of "sexual abuse," the statute is silent on the critical matter of the age of the victim.

## 2. Does the formal categorical approach apply here?

At long last, we come to the operative question in this case: Does *Taylor*'s formal categorical approach apply to 8 U.S.C. § 1101(a)(43)(A) and 11 Del. C. § 767? We have already indicated that Singh's statute of conviction does not invite us to go beyond the formal categorical approach, because it is not phrased in the disjunctive in a relevant way. Thus we must ask whether 8 U.S.C. § 1101(a)(43)(A) (and specifically "sexual abuse of a minor") invites inquiry—that is, whether it is more like the amount-of-loss provision of 8 U.S.C. § 1101(a)(43)(M)(i), or more like provisions for "burglary," 8 U.S.C. § 1101(a)(43)(G), or "crime of violence," 8 U.S.C. § 1101(a)(43)(F).

---

[13]It seems that, in *Wilson*, we declined to take the disjunctive phrasing as an invitation to make further inquiry because the disjunctive words of N.J. Stat. Ann. § 2C:35-5(a)(1) did not differentiate between offenses for purposes of judgment and penalty (unlike the numbered paragraphs of subsection (b) of that statute, which carried separate penalties). As noted above, however, it is possible that a disjunctive definition of a single offense, for state law purposes of judgment and penalty, might nonetheless invite further inquiry for the purposes of § 1101(a)(43)'s definition of an aggravated felony.

We think it clear that "sexual abuse of a minor" belongs in the latter category. First, it is listed in the same subsection as "murder" and "rape," two terms that share the common law pedigree of "burglary," which was examined in *Taylor* itself. Applying the maxim *noscitur a sociis*,[14] we would place "sexual abuse of a minor" in a similar mold. Second, nothing in the phrase "sexual abuse of a minor" signals that a factual investigation is called for. Congress could have enacted, for example, the language "any sex offense, where the victim of such offense was a minor"; such language, parallel to provisions like 8 U.S.C. § 1101(a)(43)(G) & (S), might direct our inquiry into the facts of the crime rather than its definition. Third, in an area that so routinely implicates state laws, Congress is presumed to legislate against the backdrop of existing state statutes. The widespread existence of state statutes specifically criminalizing sexual abuse of a minor, *see, e.g.*, Ala. Code § 13A-6-67 ("Sexual abuse in the second degree"); Cal. Penal Code § 288.5 ("Continuous sexual abuse of a child"); 11 Del. C. § 778 ("Continuous sexual abuse of a child"); 18 Pa. Cons. Stat. § 6312 ("Sexual abuse of children"), supports the conclusion that Congress intended *Taylor*'s formal categorical approach to be applied in this case.

IV. Conclusion

In view of our conclusion in Part III.B that *Taylor*'s formal categorical approach applies to "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A) and 11 Del. C. § 767, our analysis in Part III.A stands: Because § 767 does not establish the age of the victim, a conviction under that statute is not the aggravated felony of sexual abuse of a minor. Because Singh has not been convicted of an aggravated felony, we have jurisdiction and will grant the petition for review.

---

[14]"The meaning of a word is or may be known from the accompanying words." *Black's Law Dictionary* 1060 (6th ed. 1990).

25